UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
ANTHONY J. FUTIA, JR.,                          :
                 Plaintiff,           :
                                       :          **OPINION AND ORDER**
v.                                              :
                                       :          22 CV 6965 (VB)
UNITED STATES OF AMERICA,                        :
                 Defendant.          :
--------------------------------------------------------------x

Briccetti, J.:

      Plaintiff Anthony J. Futia, Jr., proceeding pro se, brings this action against defendant the

United States of America, alleging the United States violated his First, Fifth, and Fourteenth

Amendment rights by taxing plaintiff's income while failing to respond to his petitions for

redress.  Plaintiff also brings a motion for preliminary relief, seeking to enjoin defendant from

levying $1,702.86 per month from plaintiff's social security payments for unpaid taxes, and to

direct defendant to return to plaintiff's bank account the funds already levied pending the

outcome of this action.

      Now pending are (i) defendant's motion to dismiss pursuant to Rules 12(b)(1) and

12(b)(6) (Doc. #21), and (ii) plaintiff's motion for preliminary relief.  (Doc. #29).

      For the reasons set forth below, the motion to dismiss is GRANTED, and the motion for

preliminary relief is DENIED as moot.

**BACKGROUND**

      For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-

pleaded factual allegations in the amended complaint, any documents attached thereto,[1] and

---

[1]     In deciding a Rule 12(b)(6) motion, the Court "may consider the facts alleged in the
complaint, documents attached to the complaint as exhibits, and documents incorporated by
reference in the complaint."  DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir.
2010).

certain factual allegations in plaintiff's opposition.[2]  The Court draws all reasonable inferences in

plaintiff's favor, as summarized below.

Plaintiff claims to be a "founding member" of the We the People Foundation for

Constitutional Education, Inc.; We the People of New York, Inc.; and We the People Congress,

Inc. (together, the "WTP Organizations").  (Doc. #1 ("Compl.") ¶ 4).  According to plaintiff, the

WTP Organizations

> promote the view that the historical record of the Petition Clause of the First
> Amendment proves: a) the government is obligated to respond to the People's
> questions, their proper Petitions for Redress of the Government's violations of
> the State and Federal Constitutions, and laws pursuant thereto; and b) **if** the government
> does not respond, the Right to Petition includes the Right of enforcement, including
> "redress before taxes."

(Doc. #28 ("Pl. Opp.") at 2).  As for taxes, the WTP Organizations purportedly espouse the view

that the Sixteenth Amendment was never properly ratified and the U.S. income tax system is

unconstitutional because it violates the original U.S. Constitution.  (See, e.g., Doc. #1-1 at ECF

7–8; Doc. #1-3 at ECF 17; Doc. # 1-14 at ECF 6–24.)[3]

Over the past twenty-five years, plaintiff has "approved" and "been actively engaged" in

the WTP Organizations' daily activities, including their "Petitions for Redress of dozens of

---

Unless otherwise indicated, case quotations omit all internal citations, quotation marks,
footnotes, and alterations.

[2]     Because plaintiff is proceeding pro se, the Court considers new allegations in the
opposition, to the extent they are consistent with the complaint.  See Kelley v. Universal Music
Grp., 2016 WL 5720766, at *6 (S.D.N.Y. Sept. 29, 2016).

Plaintiff will be provided copies of all unpublished opinions cited in this decision.  See
Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009) (per curiam).

[3]     "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case
Filing system.

violations of the New York State and United States Constitutions by government officials."
(Compl. ¶ 4).  Plaintiff attaches to his complaint and opposition various petitions and other
grievances he, and others that appear to be associated with the WTP Organizations, have sent to
government officials regarding the alleged unconstitutionality of the U.S. income tax system.
(See, e.g., Docs. ##1-1–1-10, 1-14, 28-11–28-17).  As part of these efforts, plaintiff purportedly
engaged in "an intense, rational, professional approach, begun in 1999" to hold defendant
"accountable to the rule of law, relying entirely on his constitutionally endowed Rights" and
defendant's "obligations under the Petition Clause of the First Amendment." (Compl. ¶ 5).  For
over twelve years, defendant has allegedly refused to respond to plaintiff's petitions for redress
"while continuing to enforce the direct, un-apportioned tax on labor."  (Id. ¶ 6).  Beginning in
2012, plaintiff decided "to exercise his Right to 'Redress before taxes'" and "stopped paying the
direct, un-apportioned tax on his labor." (Id. ¶ 7).  However, plaintiff indicates he paid income
taxes in 2016 "under protest." (Id. ¶ 3).  From 2012 through 2019, plaintiff contends defendant
has sent him payment demands "while ignoring" and failing to respond to plaintiff's "totally
reasonable, constitution-based explanation for his reason to stop" paying income taxes.  (Id. ¶ 8).

Plaintiff alleges the Social Security Administration ("SSA") had "long been depositing
$2,614" per month into his bank account.  (Compl. ¶ 14).  However, in a letter dated August 9,
2022, the SSA informed plaintiff that it was withholding $1,534.80 at the direction of the
Internal Revenue Service ("IRS"), and would continue to withhold this amount from plaintiff's
social security payments each month, to "pay your debt to the IRS."  (Doc. #1-16 at ECF 5).

Plaintiff alleges defendant violated his First Amendment right to petition the government,
and his Fifth and Fourteenth Amendment due process rights "by enforcing a direct, un-
apportioned tax against Plaintiff, including the imposition of a levy, while refusing to provide

Plaintiff with any response, much less a meaningful response, to Plaintiff's oft-repeated, intelligent, rational, professional, unique, [and] non-frivolous" grievances regarding defendant's purportedly unconstitutional "imposition and enforcement of said tax." (Compl. ¶ 1). As relief, plaintiff seeks: (i) a declaration that he "is not guilty of failing to pay the subject tax" for 2014, 2015, 2017, 2018, and 2019, and that he "is entitled to a refund of the tax paid under protest for 2016"; and (ii) an injunction enjoining defendant "from collecting any tax by levy on any property or rights to property belonging to" plaintiff "pending the outcome of this case."[4] (Id. at 4).[5] Likewise, in his second motion for preliminary relief, plaintiff seeks "an Order enjoining defendant from continuing its taking of my monthly retirement pay and my monthly social security pay, and directing defendant to return to my bank account the full amount that it took, pending the final outcome of this case." (Doc. #29 at ECF 1).[6]

---

[4] In the complaint, plaintiff also sought an injunction against JP Morgan Chase Bank NA and The Bank of Greene County "enjoining them from sending" his "money to the IRS pending the outcome of this case." (See Compl. at 4). However, plaintiff did not name these parties as defendants or plead any factual allegations against them in his complaint, so the Court cannot grant this relief. Accordingly, to the extent plaintiff attempts to bring any claims against these entities, such claims must be dismissed. Indeed, plaintiff filed a separate lawsuit against these entities and others in Supreme Court, Westchester County, which was subsequently removed to this Court. See Futia v. Roberts, No. 23-cv-1774 (S.D.N.Y. removed Mar. 1, 2023) (VB).

On August 15, 2022, the same day plaintiff commenced this lawsuit, plaintiff filed his first motion for preliminary relief. (Doc. #3). The Court denied that motion (Doc. #7), as well as plaintiff's motion for reconsideration of that decision. (Docs. ##9, 13). On January 11, 2023, plaintiff filed a second motion for preliminary relief (Doc. #29), which is addressed in Section V infra.

[5] Plaintiff re-starts the numbering of his paragraphs on page 4 of his complaint. To avoid confusion with plaintiff's earlier paragraphs, the Court refers to the page number of the complaint for those newly-numbered paragraphs.

[6] Although the Court previously observed that "Plaintiff plainly has a right to sue for any incorrectly assessed taxes pursuant to 28 U.S.C. § 1346(a)," the Court also previously determined "Plaintiff has failed to plead compliance with the necessary procedural requirements of filing such a suit." (Doc. #7). However, in his opposition, plaintiff clarifies he is not pursuing

In addition, in his opposition, plaintiff asserts that "under the original intent of the Petition Clause" he has a right "to a response from the Government to his Petition for Redress of the Government's violation of the Constitution's tax clauses."  (Pl. Opp. at 6).

## DISCUSSION

I.    Standard of Review

A.    Rule 12(b)(1)

A district court must dismiss an action pursuant to Rule 12(b)(1) "for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it."  Conn. Parents Union v. Russell-Tucker, 8 F.4th 167, 172 (2d Cir. 2021).

When deciding a Rule 12(b)(1) motion at the pleading stage, the court "must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor," except for "argumentative inferences favorable to the party asserting jurisdiction." Buday v. N.Y. Yankees P'ship, 486 F. App'x 894, 895 (2d Cir. 2012) (summary order).  To the extent a Rule 12(b)(1) motion places jurisdictional facts in dispute, the district court may resolve the disputed jurisdictional fact issues by referring to evidence outside the pleadings.  Amidax Trading Grp. v. S.W.I.F.T. SCRL, 671 F.3d 140, 145 (2d Cir. 2011).

Even when a plaintiff is proceeding pro se, he "has the burden of proving by a preponderance of the evidence that such jurisdiction exists."  DeBoe v. Du Bois, 503 F. App'x 85, 86 (2d Cir. 2012) (summary order).  In other words, "[n]otwithstanding the liberal pleading

_____

a statutory claim under this provision.  (Pl. Opp. at 7–8).  Instead, plaintiff states his "claims arise under the Constitution, not 28 U.S.C. 1346(a)" and he "has no interest in abandoning his Rights by proceeding under 28 U.S.C. 1346(a), a statute intended for those with cases in law and equity that do not arise under the Constitution."  (Id.).  Therefore, the Court analyzes the complaint and second motion for preliminary relief to assert claims solely under the Constitution.

standard afforded <u>pro se</u> litigants, federal courts are courts of limited jurisdiction and may not

preside over cases if subject matter jurisdiction is lacking." <u>Clarkes v. Law Offs. of Michael G.</u>

<u>Hughes</u>, 2018 WL 5634932, at *2 (E.D.N.Y. Oct. 30, 2018).

In addition, when a defendant moves to dismiss for lack of subject matter jurisdiction and

on other grounds, the court should consider the Rule 12(b)(1) challenge first. <u>Rhulen Agency,</u>

<u>Inc. v. Alabama Ins. Guar. Ass'n</u>, 896 F.2d 674, 678 (2d Cir. 1990).

B.      Rule 12(b)(6)

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative

complaint under "the two-pronged approach" articulated by the Supreme Court in <u>Ashcroft v.</u>

<u>Iqbal</u>, 556 U.S. 662, 679 (2009).  First, a plaintiff's legal conclusions and "[t]hreadbare recitals

of the elements of a cause of action, supported by mere conclusory statements," are not entitled

to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  <u>Id</u>. at 678;

<u>Hayden v. Paterson</u>, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded

factual allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement to relief."  <u>Ashcroft v. Iqbal</u>, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard

of "plausibility."  <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678; <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544,

557 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678.  "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully."  <u>Id</u>. (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 556).

The Court must liberally construe submissions of pro se litigants and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (collecting cases).  "Even in a pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010).  Nor may the Court "invent factual allegations" a plaintiff has not pleaded.  Id.

II.      Subject Matter Jurisdiction

Defendant argues sovereign immunity bars plaintiff's claims and that no waiver of immunity applies.

The Court agrees as to plaintiff's requests for declaratory and injunctive relief, but disagrees as to plaintiff's constitutional claims based on defendant's alleged failure to respond to plaintiff's petitions for redress.

A.      Legal Standard

"Sovereign immunity is a jurisdictional bar," Lunney v. United States, 319 F.3d 550, 554 (2d Cir. 2003), and "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." Dorking Genetics v. United States, 76 F.3d 1261, 1263 (2d Cir. 1996) (quoting F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994)).  It is plaintiff's burden to show Congress waived sovereign immunity over his claims against defendant.  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  The Supreme Court has "frequently held that waivers of sovereign immunity are to be strictly construed, in terms of their scope, in favor of the sovereign." Cooke v. United States, 918 F.3d 77, 81 (2d Cir. 2019) (quoting Dep't of the Army v. Blue Fox, Inc., 525 U.S. 255, 261 (1999)).  Consent to suit must be expressed unequivocally, with any

ambiguity construed strictly in favor of the government.  See United States v. Nordic Vill., Inc., 503 U.S. 30, 34 (1992).

      B.      <u>Application</u>

Here, the statutes to which plaintiff refers do not waive sovereign immunity with respect to plaintiff's requests for declaratory and injunctive relief.

      1.      <u>Declaratory Judgment and Tax Anti-Injunction Acts</u>

First, Congress has preserved defendant's sovereign immunity by enacting statutes that prohibit the specific relief plaintiff seeks.

Plaintiff requests a declaration that he "is not guilty of failing to pay the subject tax" for multiple years and that defendant owes him a refund for 2016 when he paid "under protest." (Compl. at 4).  However, the Declaratory Judgment Act "forbids courts from declaring obligations 'with respect to Federal taxes.'"  <u>Nath v. JP Morgan Chase Bank</u>, 2016 WL 5791193, at *11 (S.D.N.Y. Sept. 30, 2016) (quoting 28 U.S.C. § 2201(a)); <u>see also</u> <u>Black v. United States</u>, 534 F.2d 524, 527 n. 3 (2d Cir. 1976) (noting 28 U.S.C. § 2201, "which generally provides for declaratory judgments, contains a specific exception for matters relating to federal taxes"). "Accordingly, courts routinely dismiss requests for judgments declaring federal tax obligations, even in the face of lengthy recitals of assumed violations of constitutional rights." <u>Clavizzao v. United States</u>, 706 F. Supp. 2d 342, 347 (S.D.N.Y. 2009) (quoting <u>Jolles Found. v. Moysey</u>, 250 F.2d 166, 169 (2d Cir. 1957)).

Plaintiff's request to enjoin the United States from "from collecting any tax by levy on any property or rights to property belonging to" plaintiff, such as his social security payments (Compl. at 4),  is likewise barred by the Tax Anti-Injunction Act, which states "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by

any person." Clavizzao v. United States, 706 F. Supp. 2d at 346 (quoting 26 U.S.C. § 7421(a));

see Bob Jones Univ. v. Simon, 416 U.S. 725, 736 (1974) (Tax Anti-Injunction Act's "language

could scarcely be more explicit").  Accordingly, instead of waiving "sovereign immunity for tax-

related challenges like the one presented here," "Congress has, in fact, done the opposite" with

the Tax Anti-Injunction Act.  Scheuering v. United States, 2014 WL 6865727, at *3 (S.D.N.Y.

Dec. 4, 2014).

     2.  Administrative Procedure Act

   Second, the Administrative Procedure Act does not waive defendant's sovereign

immunity with respect to plaintiff's requests for declaratory and injunctive relief.  However, the

Court construes plaintiff's complaint and opposition to assert a claim under the First, Fifth, and

Fourteenth Amendments based on defendant's purported failure to respond to plaintiff's

petitions, and to seek other relief for which the Administrative Procedure Act waives defendant's

sovereign immunity to suit.

   Plaintiff argues the Court has subject matter jurisdiction in light of the Administrative

Procedure Act ("APA"), 5 U.S.C. § 702 ("Section 702").  (Pl. Opp. at 7).  Section 702 "generally

waives the Federal Government's immunity from a suit 'seeking relief other than money

damages and stating a claim that an agency or an officer or employee thereof acted or failed to

act in an official capacity.'"  Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v.

Patchak, 567 U.S. 209, 215 (2012) (quoting 5 U.S.C. § 702).  However, the waiver provision of

Section 702 "does not apply if any other statute that grants consent to suit expressly or impliedly

forbids the relief which is sought by the plaintiff."  Id.  Thus, plaintiff is precluded from

"exploiting the APA's waiver to evade limitations on suit contained in other statutes."  Id.

a.    Declaratory and Injunctive Relief

Here, as discussed above, plaintiff has failed to demonstrate that the United States waived sovereign immunity with respect to his requests for declaratory and injunctive relief.  Therefore, plaintiff "cannot rely upon the APA to obtain injunctive or declaratory relief that is prohibited by the Anti-Injunction Act . . . or the Declaratory Judgment Act."  Larson v. United States, 2016 WL 7471338, at *7 n. 12 (S.D.N.Y. Dec. 28, 2016).

Although plaintiff contends his "only purpose of this suit and his actions leading up to this suit was and is to redress a grievance – that is, to set right a violation of the Constitution, not to restrain the assessment or collection of any tax," this is belied by his other allegations.  (Pl. Opp. at 7).  Specifically, elsewhere in his opposition, plaintiff argues, "the Petition Clause also grants him the natural, un-alienable right to injunctive relief – that is, the necessary, indispensable and unavoidable right to retain his taxes until the grievance is redressed in the interest of preventing a future wrong."  (Id. at 6).

Accordingly, the Administrative Procedure Act does not waive defendant's sovereign immunity over plaintiff's request for a declaratory judgment regarding his tax liability or to enjoin defendant from collecting taxes, and the Court lacks subject matter jurisdiction over those claims.  See We the People Found., Inc. v. United States, 485 F.3d 140, 141–42 (D.C. Cir. 2007) (holding the court lacked subject matter jurisdiction to address plaintiffs' request to enjoin the government "from retaliating against plaintiffs' exercise of their constitutional rights (in other words, to prevent the Government from collecting taxes from them)").

b.    Constitutional Claims

However, the Court construes plaintiff's complaint and opposition to separately allege a First Amendment Petition Clause claim, as well as due process claims under the Fifth and

10

Fourteenth Amendments, based on defendant's alleged failure to respond to plaintiff's petitions. The Administrative Procedure Act waives defendant's sovereign immunity with respect to these claims.

In We the People Foundation, Inc. v. United States ("We the People"), a case brought by one of the WTP Organizations plaintiff founded, the court examined (i) whether the plaintiffs had "a First Amendment right to receive a government response to or official consideration of their petitions," and (ii) whether plaintiffs had "the right to withhold payment of their taxes until they receive adequate action on their petitions." 485 F.3d at 142. The court determined the second claim was barred and held that plaintiffs cannot "seek to restrain the Government's collection of taxes, which is precisely what the Anti–Injunction Act prohibits, notwithstanding that plaintiffs have couched their tax collection claim in constitutional terms." Id. at 143. However, as to the first claim, the D.C. Circuit found that Section 702 waives sovereign immunity—and therefore confers subject matter jurisdiction—over "a straight First Amendment Petition Clause claim—namely, that [plaintiffs] have a right to receive a government response to or official consideration of their various petitions." Id.

Here, plaintiff asserts a claim similar to the "straight First Amendment Petition Clause claim" asserted in We the People. Compare Pl. Opp. at 6 (plaintiff "has a Right to response from the Government to his Petition for Redress of the Government's violation of the Constitution's tax clauses" under the First Amendment's Petition Clause), with We the People Foundation v. United States, 485 F.3d at 141–42 (court had subject matter jurisdiction over plaintiffs' request that the government "enter into 'good faith exchanges' with plaintiffs and . . . provide 'documented and specific answers' to the questions posed in the petitions"). He likewise asserts due process claims under the Fifth and Fourteenth Amendments alleging defendants are

"enforcing a direct, un-apportioned tax against Plaintiff, including the imposition of a levy, while refusing to provide Plaintiff with any response, much less a meaningful response, to Plaintiff's . . . Petition for Redress."  (Compl. ¶ 1).

Because these claims seek relief other than money damages and claim that an agency or an officer or employee thereof acted or failed to act in an official capacity, the Administrative Procedure Act waives sovereign immunity as to these claims, and the Court has subject matter jurisdiction over them to the extent they seek a response from defendant.

However, as discussed below, because plaintiff has failed to state a claim under any of these Amendments, his claims must be dismissed under Rule 12(b)(6).

III.   First Amendment Claim

Defendant argues plaintiff fails plausibly to allege a First Amendment claim because the constitutional right to petition the government does not include a right to a response.

The Court agrees.

"The First Amendment protects a right to . . . petition the government for the redress of grievances."  Ayala-Rosario v. Westchester Cnty., 2020 WL 3618190, *5 (S.D.N.Y. July 2, 2020).  However, "[t]he right to petition in general guarantees only that individuals have a right to communicate directly to government officials . . . .  It does not guarantee, as plaintiff contends, . . . that an elected official will necessarily act a certain way or respond in a certain manner to requests from his constituents."  Kittay v. Giuliani, 112 F. Supp. 2d 342, 354 (S.D.N.Y. 2000) (citing Minn. State Bd. for Cmty. Colls. v. Knight, 465 U.S. 271, 285 (1984)), aff'd, 252 F.3d 645 (2d Cir. 2001).  Indeed, "[n]othing in the First Amendment or in [the Supreme] Court's case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications on public

12

issues." <u>Minn. State Bd. for Cmty. Colls. v. Knight</u>, 465 U.S. at 285; <u>see</u> <u>also</u> <u>Smith v. Ark.</u>

<u>State Highway Emps., Local 1315</u>, 441 U.S. 463, 465 (1979) (noting "the First Amendment does

not impose any affirmative obligation on the government to listen, [or] to respond"); <u>Futia v.</u>

<u>New York</u>, 837 F. App'x 17, 20 (2d Cir. 2020) (summary order), <u>cert. denied</u>, 141 S. Ct. 1741

(2021).

Here, based on his own allegations, plaintiff has exercised his right to petition defendant

to redress his grievances since 1999 when he began submitting petitions to various federal

officials regarding the alleged unconstitutionality of federal income tax.  (<u>See, e.g.</u>, Compl. ¶¶ 4–

6).  Because plaintiff "does not allege [defendant] prevented him from communicating any

grievance," <u>see</u> <u>Kittay v. Giuliani</u>, 112 F. Supp. 2d at 354, he fails plausibly to allege defendant

violated his constitutional right to petition the government.

Accordingly, plaintiff's First Amendment claim must be dismissed.

IV.     <u>Due Process Claims</u>

Defendant argues plaintiff has not plausibly alleged a violation of his due process rights

under the Fifth and Fourteenth Amendments because (i) plaintiff does not have a First

Amendment right to receive a response to his grievances before federal income taxes are

imposed and enforced; and (ii) the United States has the power to impose and enforce federal

income taxes under the Sixteenth Amendment, contrary to plaintiff's petitions for redress.

Therefore, defendant argues, plaintiff has not alleged he was deprived of a constitutional right

without due process.

The Court agrees.

The Sixteenth Amendment "provides Congress with the necessary authority to impose a

direct, non-apportioned income tax."  <u>United States v. Sitka</u>, 845 F.2d 43, 46 (2d Cir. 1988)

(citing Brushaber v. Union Pac. R.R. Co., 240 U.S. 1, 12–19 (1916)).  The Second Circuit has

confirmed "the federal income tax is constitutional."  See Zuckman v. Dep't of Treasury, 448 F.

App'x 160, 161 (2d Cir. 2012) (summary order).  And it is "well settled that" due process "is not

a limitation upon the taxing power conferred upon Congress by the Constitution; . . . the

Constitution does not conflict with itself by conferring, upon the one hand, a taxing power, and

taking the same power away, on the other hand, by the limitations of the due process clause."

Brushaber v. Union Pac. R.R. Co., 240 U.S. at 24.

Accordingly, courts have declined to find due process violations based on the imposition

or withholding of federal income tax under the Sixteenth Amendment.  See, e.g., George v.

United States, 2022 WL 562758, at *2 (N.D. Cal. Feb. 24, 2022) (collecting cases and dismissing

plaintiffs' claims about unconstitutionality of federal income tax "[b]ecause the Sixteenth

Amendment is constitutional"); United States v. Shimek, 445 F. Supp. 884, 889 (M.D. Pa. 1978)

("Federal income tax withholding does not result in a taking of property without due process and

is a legitimate exercise of Congress' power to make all laws necessary and proper for the taxing

of income pursuant to the Sixteenth Amendment to the United States Constitution.").

In addition, "[t]he constitutionality of the levy procedure, of course, has 'long been

settled.'"  United States v. Nat'l Bank of Com., 472 U.S. 713, 721 (1985) (quoting Phillips v.

Comm'r, 285 U.S. 589, 595 (1931)).  "Time after time the Supreme Court has upheld the

constitutionality of summary administrative procedures [for levying unpaid taxes] contained in

the Internal Revenue Code against due process challenges, on the basis that a post-collection

remedy (e.g., a tax refund suit) exists and is sufficient to satisfy the requirements of

constitutional due process."  Celauro v. U.S. I.R.S., 411 F. Supp. 2d 257, 269 (E.D.N.Y. 2006)

(collecting Supreme Court cases), aff'd, 214 F. App'x 95 (2d Cir. 2007) (summary order).

Here, plaintiff alleges his due process rights were violated by defendant "imposing and enforcing a direct, un-apportioned tax on his labor without responding to his Petition for Redress of the Government's violation of the tax clauses of the Constitution."  (Pl. Opp. at 1; see Compl. ¶ 1).

However, as discussed in Part III supra, plaintiff has no First Amendment right to receive a response to his petitions.  In addition, it is not a taking of plaintiff's property without due process for the United States to impose an income tax on citizens like plaintiff, which is permitted by the Sixteenth Amendment, or to impose a levy to satisfy unpaid taxes.

Accordingly, plaintiff's due process claims must be dismissed.

V.     Motion for Preliminary Relief

Because the Court dismisses this case in its entirety, it need not address the merits of plaintiff's motion for preliminary relief, which is now moot.

VI.    Leave to Replead

A district court ordinarily should not dismiss a pro se complaint for failure to state a claim "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (quoting Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999)).  Here, however, reading the complaint liberally, the Court does not find any allegations that suggest plaintiff has a valid claim he has merely "inadequately or inartfully pleaded" and therefore should be "given a chance to reframe."  Id.  On the contrary, the Court finds that repleading would be futile, because the problems with plaintiff's causes of action are substantive, and supplementary and/or improved pleading will not cure their deficiencies.  See id.

Accordingly, the Court declines to grant plaintiff leave to file an amended complaint.

## CONCLUSION

Defendant's motion to dismiss is GRANTED.

Plaintiff's motion for preliminary relief is DENIED as moot.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order

would not be taken in good faith, and therefore in forma pauperis status is denied for the

purposes of an appeal.  Cf. Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

The Clerk is instructed to terminate the motions (Docs. ##21, 29), and close this case.

Chambers will mail a copy of this Opinion and Order to plaintiff at the address on the

docket.

Dated:  April 24, 2023
        White Plains, NY

SO ORDERED:

_____

Vincent L. Briccetti
United States District Judge

16